IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

CENTRAL MISSISSIPPI CREDIT ⟩
CORPORATION, ⟩
⟩
        Appellant, ⟩
⟩
        v. ⟩     CASE NO. 3:15-cv-00932-JAR
⟩
PEGGY ANN VAUGHN, ⟩
⟩
        Appellee. ⟩

## MEMORANDUM OPINION AND ORDER

     Appellant Central Mississippi Credit Corporation ("CMCC" or "Appellant") appeals from a decision of the U.S. Bankruptcy Court for the Middle District of Alabama (the "bankruptcy court"). Appellee Peggy Ann Vaughn ("Vaughn" or "Appellee") brought an adversary proceeding against CMCC, and the bankruptcy court held that CMCC willfully violated the automatic stay under Appellee's Chapter 13 bankruptcy and awarded $1,500 in actual damages and $50,000 in punitive damages, plus attorneys' fees. Vaughn v. Cent. Miss. Credit Corp. (In re Vaughn), 542 B.R. 589, 594, 595, 604 (Bankr. M.D. Ala. 2015). CMCC challenges the bankruptcy court's willful violation determination, damages awards, and several actions of the bankruptcy court, which CMCC argues violated its due process rights. Br. for Appellant 13–36, ECF No. 6 ("CMCC Br."). For the reasons stated below, the court affirms in part and vacates and remands in part, the bankruptcy court's order.

## BACKGROUND

     The court presumes familiarity with the facts of the case as discussed in the bankruptcy court's Memorandum Decision, see In re Vaughn, 542 B.R. at 593–98; however, relevant facts

and procedural history are recounted here for ease of reference.  In late 2013, CMCC filed suit in the Justice Court of Rankin County, Mississippi (the "Mississippi court") against Peggy Vaughan ("Vaughan") to collect a debt of $666.26.  Id. at 593.  In its hand-written complaint, CMCC initially spelled Vaughan's last name correctly, but spelled it incorrectly, as "Vaughn," elsewhere in the document.  Id.  Subsequently, the Mississippi court misspelled Vaughan's last name as "Vaughn" in the summons and entered a default judgment against "Peggy Vaughn," rather than Vaughan, on January 22, 2014.  Id.

CMCC then requested a writ of garnishment, again misspelling the last name as "Vaughn," and when the Mississippi court issued the writ to First Student Management, LLC ("First Student"), the writ as issued also named "Vaughn."  Id. at 594.  First Student happens to employ both Peggy Vaughan, the resident of Mississippi and individual from whom CMCC intended to collect the debt, and Peggy Ann Vaughn, the resident of Alabama, Appellee in this proceeding, and at the time, debtor in chapter 13 bankruptcy whose estate was subject to an automatic stay.  Id.  At no point has Appellee owed any debts to CMCC.  Id.

On or about March 26, 2014, Appellee received notice that a portion of her wages would be garnished.  Id. at 594 & n.3.  Shortly thereafter, Appellee called CMCC and informed a representative that she did not owe money to CMCC and that she was in Chapter 13 bankruptcy.  Id. at 594–95.  Appellee later informed her bankruptcy counsel, Paul Esco ("Esco"), of the garnishment, who then called CMCC on April 17, 2014, and again informed a representative of CMCC that Appellee did not owe money to CMCC and that she was in Chapter 13 bankruptcy.  Id. at 595.  During the April 17, 2014, call with Esco, the CMCC representative acknowledged that a mistake of identity had occurred and promised to resolve the matter.  Id.  CMCC alleges that a representative relayed this information to a representative of First Student that same day.

Id.  Neither CMCC nor First Student, however, has a record of any such communication, and the bankruptcy court expressly found that it could not "give credence to such an oblique" assertion. Id.  Instead, the bankruptcy court found that "CMCC did nothing to stop [the] garnishment . . . through June 2014."  Id.  The bankruptcy court found that the only evidence that CMCC notified First Student of the error was by letter on July 14, 2014, weeks after the final garnishment, months after being notified of the error, and days after receiving notice of Appellee's adversary proceeding.  Id.

In the interim, Automatic Data Processing ("ADP"), the payroll processor of First Student, withheld wages from Appellee's bi-weekly paycheck on four occasions from April 18, 2014, to June 27, 2014, totaling $666.26.  Id.  On June 30, 2014, Appellee initiated an adversary proceeding against CMCC, alleging that CMCC willfully violated the automatic stay in her underlying Chapter 13 bankruptcy and seeking damages under 11 U.S.C. § 362(k) (2012). Compl. ¶¶ 1, 15–16, 18–20, DE 1.[1]  Vaughn served the complaint on CMCC on July 11, 2014. In re Vaughn, 542 B.R. at 595.  Thereafter, as noted previously, on July 14, 2014, CMCC sent a letter to First Student informing First Student of the mistake and asking First Student to issue Vaughn a refund.  Id.  Appellee received a full refund sometime in August 2014.  Id. at 596.

Counsel for Appellee made a discovery request in the adversary proceeding on November 13, 2014.  Pl.'s Disc. Reqs., DE 32.  CMCC did not answer the interrogatories or provide the requested documents to the satisfaction of the bankruptcy court within the statutory time limit of thirty days.  In re Vaughn, 542 B.R. at 596; see Fed. R. Bankr. P. 7033–34.  Subsequently, counsel for CMCC, Margaret H. Manuel ("Manuel"), filed a motion to withdraw from

---

[1] All DE references are to documents on the bankruptcy court's docket in adversary proceeding number 14-08010.

representation of CMCC due to a "breakdown in communication."  Mot. to Withdraw, DE 13.

After a hearing on January 13, 2015, the bankruptcy court entered orders granting Manuel's

motion to withdraw, entered default against CMCC sua sponte, and scheduled an evidentiary

hearing for January 27, 2015, to determine damages.  Order Granting Mot. to Withdraw, DE 16;

Order, Jan. 22, 2015, DE 18 ("Default Order") (entering default and setting damages hearing).

The bankruptcy court mailed a copy of the Default Order entered January 22, 2015, to CMCC.

See Default Order at 2.  CMCC retained new counsel, Joseph E. Watson, III ("Watson"), but

Watson did not attend the evidentiary hearing, and the bankruptcy court issued a default

judgment in favor Appellee awarding $50,000 in actual damages, $150,000 punitive damages,

and $3,740 in attorneys' fees to be paid by CMCC.  Default J., DE 20 vacated, Order 1, Mar. 13,

2015, DE 36.

On February 10, 2015, CMCC moved to vacate the default judgment.  Mot. to Set Aside

Default J., DE 23.  Following a hearing, at which CMCC argued the default judgment was

improperly entered and that CMCC had attempted to comply with Vaughn's discovery request,

the bankruptcy court granted the motion and vacated the default judgment, citing the disfavor for

default judgments and preference for a trial on the merits.  Tr. of Hr'g Mar. 10, 2015, at 2–4, 11,

DE 62; Order 1, Mar. 13, 2015.  The bankruptcy court also extended discovery for Appellee,

denied an extension of discovery for CMCC, and instructed CMCC to comply with Appellee's

discovery requests.  See Order 1–2, Mar. 13, 2015.  On July 23, 2015, the bankruptcy court

issued an order compelling CMCC to cooperate with discovery requests, including disclosing the

materials CMCC had relied on in arguing to vacate the default judgment, but claimed were

protected by attorney-client privilege, and awarding attorneys' fees to Appellee pursuant to

Federal Rule of Bankruptcy Procedure 7037(a)(5)(A).  Order, July 23, 2015, DE 64.

4

After a trial on November 16, 2015, the bankruptcy court held that CMCC willfully violated the automatic stay and "failed to take adequate steps to rectify its violation for almost five months after it learned of the bankruptcy." In re Vaughn, 542 B.R. at 593, 604.  The bankruptcy court awarded Appellee $1,500 in actual damages and $50,000 in punitive damages, plus attorneys' fees and costs.[2] Id. at 604.

CMCC challenges the bankruptcy court's order on five grounds.  First, CMCC challenges several factual findings of the bankruptcy court.  CMCC Br. at 16–19, 27.  Second, CMCC argues that it did not commit a willful violation of the automatic stay, as it did not "take[] affirmative action to collect from Vaughn" and, once notified, immediately took steps to remedy the mistake. Id. at 13–19.  Third, CMCC contests the damages awarded to Appellee by the bankruptcy court. Id. at 19–32.  Fourth, CMCC argues that the bankruptcy court violated CMCC's right to due process through the default judgment and unilateral extension of discovery. Id. at 32–35.  Finally, CMCC argues the bankruptcy court erred in admitting privileged communications and in denying its motion to stay pending CMCC's interlocutory appeal of the bankruptcy court's order holding that CMCC had waived attorney-client privilege. Id. at 35–36.

Appellee responds that she presented sufficient evidence at trial to support a willful violation of the automatic stay, including CMCC's knowledge of the stay and subsequent failure to take "prompt and appropriate action" to prevent or stop the garnishment.  Br. of Appellee 15–21, ECF No. 9 ("Vaughn Br.").  Appellee also argues that the bankruptcy court's damages award, including actual and punitive damages and attorneys' fees, was appropriate. Id. at 21–24,

---

[2] On March 3, 2016, after this appeal was filed, the bankruptcy court awarded Vaughn $29,084.23 in attorneys' fees and costs. See Order, Mar. 3, 2016, DE 127.

26–30.  Finally, Appellee responds that the bankruptcy court did not violate CMCC's right to due process.  Id. at 24–26.

## JURISDICTION AND STANDARD OF REVIEW

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(a), 1334(b).  The court has jurisdiction over this appeal under 28 U.S.C. § 158, acting as an appellate court.  See also 28 U.S.C. § 1334(b).  In reviewing the bankruptcy court's order, the court reviews conclusions of law de novo and factual findings for clear error.  See Brown v. Gore (In re Brown), 742 F.3d 1309, 1315 (11th Cir. 2014) (quoting Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1324 (11th Cir. 2007)).  Damages awards are reviewed for abuse of discretion, however, constitutional challenges to excessive punitive damages are reviewed de novo.  See Action Marine, Inc. v. Cont'l Carbon Inc., 481 F.3d 1302, 1309 (11th Cir. 2007).

## DISCUSSION

### I.    Factual Findings of the Bankruptcy Court

CMCC challenges several factual findings of the bankruptcy court, including:  (1) that Vaughn notified CMCC of the error in late March; (2) that CMCC did not contact the Mississippi court on April 17, 2014, after speaking with Vaughn's bankruptcy counsel; and (3) that CMCC also did not contact First Student on April 17, 2014.  See CMCC Br. at 17–18.  CMCC also asserts that a representative of CMCC contacted ADP, on April 17, 2014, and that First Student issued a refund check to Appellee on July 1, 2014, neither of which the bankruptcy court explicitly addressed in its decision.  See id. at 18–19, 27.

Factual findings of the bankruptcy court are not considered clearly erroneous unless, in the light of all evidence, the reviewing court "[is] left with the definite and firm conviction that a mistake has been made."  Int'l Pharmacy & Disc. II, Inc. v. Tabas (In re Int'l Pharmacy & Disc.

II, Inc.), 443 F.3d 767, 770 (11th Cir. 2005).  The reviewing court is not to make its own

independent factual findings, and where "the bankruptcy court's factual findings are silent or

ambiguous as to an outcome determinative factual question, the district court . . . must remand

the case to the bankruptcy court for the necessary factual determination."  Equitable Life

Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1384 (11th Cir. 1990) (alteration in

original) (quoting Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987)).

  None of the bankruptcy court's factual findings are clearly erroneous.  First, there is no

clear error in the bankruptcy court's finding that Vaughn notified CMCC of the error on or about

March 26, 2014.  Although there is no record of the phone call, Henry Borne ("Borne"), a

manager at CMCC, confirmed that the company would not create a record of a phone call from

someone, such as Vaughn, who was not a client of CMCC.  Tr. of Hr'g, Nov. 16, 2015, at 72–73,

DE 115 ("Trial Tr.").  Therefore, it was not clearly erroneous to deem Vaughn's testimony

credible on this fact.  Second, the bankruptcy court made no clear error in holding that CMCC

did not contact the Mississippi court on April 17, 2014.  Borne testified that he called the

Mississippi court upon discovering the mistake.  See id. at 75–76.  The bankruptcy court noted,

however, that the garnishment form provided by the Mississippi court on July 15, 2014, still had

the incorrect spelling, suggesting that the Mississippi court had not yet been notified of the

mistake.  In re Vaughn, 542 B.R. at 599 n.15.  Therefore, the bankruptcy court did not clearly err

by refusing to credit Borne's testimony.  Third, the bankruptcy court made no clear error in

finding that CMCC did not contact First Student on April 17, 2014.  Again, Borne testified that

he made a phone call and spoke with a "Jeff" at First Student, who supposedly told Borne that

the garnishment would be stopped.  Trial Tr. at 77.  Neither CMCC nor First Student, however,

could produce any record of the communication, and a subsequent affidavit provided by Borne

similarly does not mention the communication.  In re Vaughn, 542 B.R. at 595.  See generally

Aff. of Henry Borne, DE 24-1.  As the bankruptcy court states, "[w]ithout more proof, the Court

cannot give credence to such an oblique reference that CMCC contacted First Student about the

garnishment mistake on April 17, 2014."  In re Vaughn, 542 B.R. at 595.

      The question of whether a representative of CMCC contacted ADP on April 17, 2014,

though not addressed in the bankruptcy court decision,[3] need not be remanded because the

question is not outcome determinative.  See In re Sublett, 895 F.2d at 1384.  Borne testified that

in his conversation with an ADP representative he was told that ADP could not provide him any

information on Peggy Vaughn, as she was not a client of CMCC.  Trial Tr. at 80–81.  Therefore,

the communication with ADP, even if given credence, would not have been determinative in this

case because it was an ineffective avenue for preventing or correcting the garnishment of

Vaughn.

      The court also need not remand to the bankruptcy court for an express factual finding on

CMCC's allegation that First Student issued a refund check on July 1, 2014, as this fact is also

not outcome determinative.  The assertion is highly suspect based on the record,[4] but even if

---

[3] Though the bankruptcy court does not explicitly address the argument, the bankruptcy judge
does appear to imply that CMCC either did not contact ADP or that such communication was
irrelevant, when he stated, "[t]he Court finds that CMCC did nothing to stop its garnishment of
Plaintiff's paychecks through June 2014."  In re Vaughn, 542 B.R. at 595.

[4] CMCC's allegation conflicts with several other facts established by the record, such as:
(1) CMCC did nothing to stop the garnishment through June 2014, In re Vaughn, 542 B.R. at
595 (citing record evidence); (2) there is no record of CMCC communicating with First Student
about the mistaken garnishment until mid-July 2014, id. at 594–95 (citing record evidence);
(3) Appellee did not receive a refund check until August 2014, id. at 596 (citing record
evidence); (4) the e-mail that CMCC cites as evidence appears to list events in chronological
order except for the note regarding a manual checking being processed on July 1, 2014,
Appellant App. 36, ECF No. 6-8; and (5) letters between CMCC and First Student from mid-July
2014 reference the refund in future tense, including "you will . . . refund" and "$666.26 will be
refunded," respectively, id. at 32–33 (emphasis added).

considered valid, the bankruptcy court made sufficient findings to hold that CMCC willfully violated the automatic stay.  The bankruptcy court determined that CMCC did nothing to prevent or stop the garnishment of Appellee's wages through June 2014.  In re Vaughn, 542 B.R. at 595. This determination is not clearly erroneous and is upheld.  Therefore, regardless of CMCC's argument that a refund check was issued on July 1, 2014, as discussed below, CMCC's actions would still constitute a willful violation of the stay,[5] and the court need not remand to the bankruptcy court for an express factual finding on this issue.

## II.    Willful Violation of the Automatic Stay

CMCC contests the bankruptcy court's holding that CMCC willfully violated the automatic stay of Appellee's Chapter 13 bankruptcy.  CMCC Br. at 13–19.  CMCC argues that it committed no intentional act and that upon notification of Appellee's bankruptcy, CMCC took adequate steps to stop the garnishment.  Id.  Appellee responds that the bankruptcy court properly held that CMCC willfully violated the automatic stay as CMCC received notification of the stay on or about March 26, 2014, and did not undertake action to remedy the situation for nearly four months, at which point the full withholding had already occurred.  See Vaughn Br. at 19–20.  The bankruptcy court correctly determined that CMCC willfully violated the automatic stay.

By statute, the filing of a bankruptcy petition acts as an automatic stay, "applicable to all entities," which includes, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a).  An individual that is injured by a "willful violation" of the stay may recover certain damages,

---

[5] When the refund check was issued may, however, factor into the punitive damages amount that the court is remanding to the bankruptcy court.  It may, therefore, be prudent for the bankruptcy court to make a specific finding on this question of fact on remand.

including actual and punitive damages.  11 U.S.C. § 362(k)(1).  In the Eleventh Circuit,
willfulness is generally defined as "intentional action taken with at least callous indifference for
the consequences."  Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc., 793 F.2d
1529, 1535 (11th Cir. 1986).  A willful violation of an automatic stay occurs where the violator:
"(1) knew of the automatic stay and (2) intentionally committed the violative act, regardless
whether the violator specifically intended to violate the stay."  Jove Eng'g, Inc. v. IRS, 92 F.3d
1539, 1555 (11th Cir. 1996) (surveying other circuits and applying this principle).  Furthermore,
in considering willfulness, the court recognizes that "where the creditor received actual notice of
the automatic stay, courts must presume that the violation was deliberate," and, once the creditor
has been notified, "the burden shifts to the creditor to prevent violations of the automatic stay."[6]
Smith v. Homes Today, Inc. (In re Smith), 296 B.R. 46, 55 (Bankr. M.D. Ala. 2003) (quoting
Fleet Mortg. Grp., Inc. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999)); see also In re Rielly, 545
B.R. 435, 443 (Bankr. D. Mass. 2016).  In bankruptcy cases, it is preferred that the debtor or
debtor's counsel, in order to satisfy the duty to notify the creditor of the potential violation of a
stay, "shall make reasonable efforts to communicate with a creditor, or creditor's counsel, giving
notice of the filing of a bankruptcy petition."  In re Briskey, 258 B.R. 473, 479 (Bankr. M.D.
Ala. 2001).

      The bankruptcy court properly held that CMCC willfully violated the automatic stay
because CMCC had notice of the violation and failed to take appropriate steps to stop the
garnishment.  In late March 2014, Appellee, then again on April 17, 2014, Appellee's
bankruptcy counsel, notified CMCC that the company had requested a garnishment of the wrong

---

[6] The court recognizes that CMCC is not actually a creditor in this situation, as Appellee did not
owe any debt to CMCC; however, CMCC is treated as a creditor, with regard to its obligations to
Appellee, because CMCC acted in that role by erroneously trying to collect a debt.

individual.[7]  In re Vaughn, 542 B.R. at 594–95.  CMCC did not, however, take an affirmative

step to remedy the mistake until its letter to First Student on July 14, 2014,[8] nearly four months

later, at which point the full garnishment of Appellee's wages had occurred and Appellee had

filed, and notified CMCC of, this adversary proceeding.  See id. at 595.  The intentional violative

act, in this case, was CMCC's inaction, despite having knowledge of the mistake and the

potential harm to Appellee.  Upon receiving the phone calls from Vaughn and Esco, CMCC was

obligated to promptly act to prevent the garnishment and it failed to do so.  See In re Smith, 296

B.R. at 55.  Only upon receipt of the complaint in the adversary proceeding did CMCC finally

take action to correct its serious mistake.  Such inaction satisfies the willful violation test, and the

bankruptcy court's holding is affirmed.  See Lawrence Athletic Club v. Scroggin (In re

Scroggin), 364 B.R. 772, 775–77, 781 (B.A.P. 10th Cir. 2007) (holding that a willful violation

occurred where creditor failed to halt garnishment for nearly three months despite having notice

of debtor's bankruptcy).

## III.    Damages

CMCC also challenges the bankruptcy court's award of damages to Appellee.  CMCC

contends that Appellee suffered no compensable loss as she was not actually injured by CMCC

---

[7] CMCC's attempts to shift blame to the Mississippi court and First Student, with regard to the garnishment, are ineffective.  See CMCC Br. at 14.  It is undisputed that CMCC filed a request for a writ of garnishment bearing the incorrect name.  In re Vaughn, 542 B.R. at 594.  As the creditor and party who sought the garnishment, the burden of preventing or stopping the garnishment lay with CMCC.  See In re Smith, 296 B.R. at 55.

[8] CMCC contends that it communicated with both First Student and the Mississippi court on April 17, 2014, in an attempt to remedy the situation.  CMCC Br. at 17–18.  The bankruptcy court, however, as discussed above, did not clearly err in finding the testimony not credible on both accounts.  In re Vaughn, 542 B.R. at 595, 599 & n.15.  Furthermore, with regard to the Mississippi court, the bankruptcy court correctly noted that even if such a communication did occur, it would be irrelevant, as a proper motion to alter or amend would be required for the Mississippi court to correct the misspelling.  Id. at 599.

and otherwise failed to mitigate her damages.  CMCC Br. at 20–23.  CMCC also argues

attorneys' fees and costs should not have been awarded.  Id. at 23.  CMCC also challenges the

bankruptcy court's decision to award punitive damages and, alternatively, argues that the amount

of punitive damages is excessive and violates due process.  Id. at 25–30.  CMCC further argues

that the damages award should be limited by CMCC's offer of judgment.  Id. at 23–25.  Finally,

CMCC argues that Appellee is judicially estopped from claiming a portion of the damages

because she inaccurately reported the value of her claim in her bankruptcy schedule.  Id. at 31–

32.  Vaughn argues the bankruptcy court's damages award should be affirmed.  Vaughn Br. at

21–24.

> A.    Actual Damages

An individual injured by a willful violation of a stay "shall recover actual damages,

including costs and attorneys' fees[.]"  11 U.S.C. § 362(k)(1).  Actual damages under 11 U.S.C.

§ 362(k)(1) include compensatory damages and attorneys' fees and costs.  See Parker v. Credit

Cent. S., Inc., No. 1:14-CV-311-WKW, 2015 WL 1042793, at *5, *10 (M.D. Ala. Mar. 10,

2015).  Compensatory damages "redress the concrete loss that the plaintiff has suffered by

reason of the defendant's wrongful conduct."  Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,

532 U.S. 424, 432 (2001).  In order for an individual to recover actual damages under 11 U.S.C.

§ 362(k)(1), there must be evidence that the violation caused them injury.  See Hutchings v.

Ocwen Fed. Bank (In re Hutchings), 348 B.R. 847, 852 (Bankr. N.D. Ala. 2006).  The duty to

mitigate damages, invoked by Appellant, is a method by which courts apportion damages "where

the injured party has, subsequent to infliction of the harm, failed to exercise that degree of care

society demands of the reasonable person."  Tenn. Valley Sand & Gravel Co. v. M/V Delta, 598

F.2d 930, 932 (5th Cir. 1979).[9]  As noted previously, the debtor's duty of notification requires "reasonable efforts" to inform the creditor or creditor's counsel of the bankruptcy and potential stay violation.  In re Briskey, 258 B.R. at 479.

The bankruptcy court properly awarded actual damages to Appellee because CMCC willfully violated the Appellee's stay, Appellee suffered compensable economic damages, and Appellee did not fail to mitigate damages.  Appellee provided to the bankruptcy court evidence of her planned vacation to Atlanta and inability to buy her son's senior photos, which are concrete, compensable losses.  In re Vaughn, 542 B.R. at 601.  The bankruptcy court did not err in reasonably estimating damages at $1,500.  The record also shows that both Vaughn and her bankruptcy counsel, Esco, contacted CMCC and informed CMCC representatives of the mistake.  Id. at 594–95.  CMCC even created a record of its communication with Esco and informed Esco that the mistake would be "resolved post-haste."  Id. at 595.  Contrary to CMCC's argument, Appellee was not required to notify her employer of the potential violation.  See In re Briskey, 258 B.R. at 479 (holding that notification duty requires "reasonable efforts" to inform the creditor or creditor's counsel).  Vaughn, on her own behalf and through her counsel, made a reasonable effort to notify CMCC of her bankruptcy and the potential violation and, therefore, did not fail to mitigate the damages.  Therefore, the bankruptcy court's award of $1,500 in actual compensatory damages is affirmed.

Attorney fees and costs are appropriate where the debtor has been forced to bring a lawsuit to make the creditor or violating actor "desist from further violating the stay, or to prevent [the creditor or violator] from again violating the stay, or to undo the effects of [the

---

[9] The Eleventh Circuit adopted Fifth Circuit decisions prior to October 1, 1981 as binding precedent.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

creditor or violator's] stay violations, or to recover compensatory damages that [the debtor] actually incurred as a result of those violations."   In re Hutchings, 348 B.R. at 917.

The bankruptcy court properly ordered CMCC to compensate Appellee for her attorneys' fees and costs.  Appellee filed the adversary proceeding on June 30, 2014, at which point the full $666.26 in wages had been withheld, and Appellee did not receive a check refunding the garnished wages until August of that year.  In re Vaughn, 542 B.R. at 595–96.  Furthermore, as noted above, Appellee suffered concrete, compensable loss as a result of the violative garnishment.  Id. at 600–01.  Therefore, the adversary proceeding was a necessary legal action and it is proper to award Appellee attorneys' fees and costs.[10]  See In re Hutchings, 348 B.R. at 917.

B.      Punitive Damages

"[I]n appropriate circumstances," a party injured by a willful violation of an automatic stay "may recover punitive damages."  11 U.S.C. § 362(k)(1).  Thus, the bankruptcy court had the discretion to award punitive damages.  Courts typically consider five factors to determine whether imposition of punitive damages is proper:  "(1) the nature of the [defendant]'s conduct; (2) the nature and extent of the harm to the plaintiff; (3) the [defendant]'s ability to pay; (4) the motives of the defendant; and (5) any provocation by the debtor."  Parker, 2015 WL 1042793, at *9 (alteration in original) (quoting Castillo v. Three Aces Auto Sales (In re Castillo), 456 B.R. 719, 727 (Bankr. N.D. Ga. 2011)); see also Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).  The amount of punitive damages a court may award, however,

---

[10] At this time, however, the court does not decide whether the amount of $29,084.23 in attorneys' fees and costs awarded by the bankruptcy court is appropriate, as the order was made after this appeal was filed, Order, Mar. 3, 2016, the issue has not been briefed, and the offer of judgment issue is not resolved, see infra III. C.

14

is limited by the Due Process Clause of the Fourteenth Amendment, which prohibits "grossly excessive or arbitrary punishments," and the Supreme Court has advised reviewing courts, in determining whether punitive damages are excessive, to consider "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 418 (2003).

The bankruptcy court correctly awarded punitive damages, but, considering the disparity between the actual harm suffered and punitive damages awarded and the incongruity with punitive damages in other willful violation proceedings, the amount of $50,000 is excessive. CMCC's conduct was egregious. Not only did it perpetuate a misspelling and fail to have in place safeguards against such a mistake, CMCC failed to remedy the mistake for nearly four months after becoming aware of it. See In re Vaughn, 542 B.R. at 595. Furthermore, Appellee did not provoke any such behavior, and, in fact, never owed any money to CMCC. Id. at 594. In order to punish and deter such recklessly apathetic behavior, punitive damages are appropriate.

Where such an award, however, soars to over thirty times the amount of actual harm, it is excessive and potentially in violation of the Fourteenth Amendment.[11] Analysis of comparable cases indicates that the $50,000 award is well beyond what is appropriate. For example, the Bankruptcy Appellate Panel for the Tenth Circuit heard a similar case, wherein the creditor had notice of the debtor's Chapter 13 bankruptcy, yet continued to garnish the debtor's wages for

---

[11] The bankruptcy court recognized the excessive ratio of punitive damages to actual damages, but noted that attorneys' fees and costs, under 11 U.S.C. § 362(k)(1), are included in "actual damages," which would significantly alter the ratio and bring it to a more reasonable level. In re Vaughn, 542 B.R. at 604 n.19; see Parker, 2015 WL 1042793, at *10. Regardless, as discussed, the $50,000 award was excessive based on the facts of the case.

nearly three months.  In re Scroggin, 364 B.R. at 775–77.  The Bankruptcy Appellate Panel for

the Tenth Circuit affirmed the trial court's order awarding the debtor $2,000 in actual damages,

$5,076.96 in attorneys' fees, and, notably, just $5,000 in punitive damages.  See id. at 777, 781.

Another comparable case, wherein a hospital continued to garnish wages for more than four

months after receiving notification of the debtor's bankruptcy and did not refund the garnished

wages for nearly five months, a bankruptcy court awarded approximately $800 in actual

damages, approximately $800 in attorney's fees, and $2,000 in punitive damages.  In re Timbs,

178 B.R. 989, 990–92 (Bankr. E.D. Tenn. 1994).  Willful violation cases where large punitive

damages have been awarded and affirmed, on the other hand, generally involve blatant and

active disregard for the stay and the taking of a significant piece of property.  See In re Smith,

296 B.R. at 57–58 (awarding $25,000 in punitive damages after creditor repossessed debtor's

mobile home "in a callous, if not brutal manner," despite having knowledge of debtor's

bankruptcy); Bishop v. U.S. Bank/Firstar Bank (In re Bishop), 296 B.R. 890, 898–99 (Bankr.

S.D. Ga. 2003) (awarding $50,000 in punitive damages after creditor engaged in "reprehensible

conduct specifically targeted toward this debtor," including harassment and manipulation, in

order to repossess debtor's vehicle).[12]  The case at bar does not present conduct so extreme or a

loss so great as to warrant the $50,000 punitive damages.  Accordingly, the bankruptcy court's

punitive damages award is vacated and remanded.

---

[12] The bankruptcy court cites Parker in support of its punitive damages award; however, Parker is
not an appropriate comparison because its punitive damages award of $10,000 is one-fifth of the
punitive damages award at issue.  In re Vaughn, 542 B.R. at 604; see also Parker 2015 WL
104293, at *2.  The bankruptcy court asserts CMCC's conduct "far outdistances the Parker
violator's conduct," but, in fact, the Parker violator actively pursued litigation with knowledge of
the debtor's bankruptcy, whereas CMCC is guilty of inaction.  In re Vaughn, 542 B.R. at 604;
Parker 2015 WL 104293, at *2.

C.      Offer of Judgment

CMCC next argues that it is entitled to an offset in total damages because it made an

offer of judgment, the terms of which included $1,970 in actual damages and $5,910 in punitive

damages, which Appellee rejected.  CMCC Br. at 24.  Under the Federal Rules of Civil

Procedure, as incorporated into the Bankruptcy Rules, if an offer of judgment is rejected and the

offeree obtains a judgment less favorable than the unaccepted offer, then the offeree must cover

costs incurred after the offer was made.  Fed. R. Civ. P. 68(d); Fed. R. Bankr. P. 7068.

Resolution of this issue is premature.  Although the total damages award, including actual and

punitive damages is the relevant amount, and the bankruptcy court's order was more favorable

than CMCC's offer, see In re Vaughn, 542 B.R. at 604; Mem. Decision 8–13, DE 126, the final

amount is not known.  It may remain above the level of the offer or fall below that level after the

decision upon remand.

D.      Judicial Estoppel Regarding Damages

Judicial estoppel is an equitable doctrine that prevents a party from making inconsistent

claims in different proceedings "according to the exigencies of the moment," New Hampshire v.

Maine, 532 U.S. 742, 749 (2001) (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.

1993)), in order to "protect the integrity of the judicial process," New Hampshire v. Maine, 532

U.S. at 749–50 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)).

Under federal law, an individual filing a bankruptcy petition, which includes the bankruptcy

schedule under discussion, is required to disclose "reasonably anticipated increase[s] in income

or expenditures" that are expected to occur over the next twelve-month period.  11 U.S.C.

§ 521(a)(1)(B)(vi).  Appellee valued the adversary proceeding at $1,970 on the bankruptcy

schedule.  Appellant App. 40, ECF No. 6-8.  During the trial, she requested $5,000 in actual

damages and $50,000 in punitive damages.  Trial Tr. at 100.

Appellee is not judicially estopped from the damages awarded by the bankruptcy court

because the discrepancy between the amount on the bankruptcy schedule and damages requested

at trial is reasonable when estimating the value of a law suit and Appellee's actions did not

threaten the integrity of the judicial process.  Appellee completed the bankruptcy schedule prior

to the trial and the order of the bankruptcy court and, therefore, her evaluation was an estimation.

It is reasonable that Appellee's estimation of the value of the proceeding would change, based on

a number of factors, from the time she completed the schedule to when she testified at trial.

And, such an estimation would not necessarily include potential for punitive damages, as

punitive damages are awarded at the discretion of the court.  The evidence does not suggest

Appellee was "making a mockery of justice" and does not support CMCC's invocation of

judicial estoppel.  See McKinnon v. Blue Cross and Blue Shield of Ala., 935 F.2d 1187, 1192

(11th Cir. 1991) (quoting Am. Nat'l Bank v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1536 (11th

Cir. 1983)).

## IV.    Due Process

Next, CMCC argues that the bankruptcy court violated CMCC's due process rights

during the adversary proceeding.  First, CMCC argues that the bankruptcy court failed to provide

the written notice required by statute when it entered a default against CMCC sua sponte and

provided less than seven days of notice for the default damages hearing.  CMCC Br. at 32–34.

Second, CMCC argues that the bankruptcy court violated its due process rights by extending

discovery for Appellee during the proceedings.  Id. at 34–35.

A.     Default Proceedings

Rule 55(b)(2) of the Federal Rules of Civil Procedure, which is incorporated into the

Federal Rules of Bankruptcy Procedure under Rule 7055, states that if a party against whom a

default judgment is sought has appeared themselves or through counsel, that party "must be

served with written notice of the application [of the default] at least 7 days before the hearing."

Hearings may concern the investigations or determinations on a number of matters, including the

amount of damages.  Fed. R. Civ. P. 55(b)(2)(B); see also Fed. R. Bankr. P. 7055.  The

bankruptcy court did not provide CMCC notice of at least seven days for either the entry of

default or the damages hearing, which violated Rule 55(b)(2), but CMCC is not entitled to relief

on that grounds because the bankruptcy court subsequently vacated the improperly entered

default and default judgment.  Following the March 10, 2015, vacatur, CMCC received a full and

unprejudiced trial on the merits before the bankruptcy court.  See In re Vaughn, 542 B.R. at 597.

CMCC's due process claim, therefore, is without merit.

B.     Discovery

Discovery rulings are reviewed for abuse of discretion and will not be disturbed unless

the bankruptcy court "has made a clear error of judgment, or has applied the wrong legal

standard."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306–07 (11th Cir.

2011) (quoting Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317,

1325 (11th Cir. 2005)).  Given CMCC's adequate opportunity to make its own discovery request

and failure to comply with the discovery requests of Appellee, the bankruptcy court was within

its discretion to unilaterally extend discovery in the proceeding.

V.      **Privileged Communications**

Finally, CMCC argues that the bankruptcy court erred in admitting evidence and testimony that CMCC asserts was protected under attorney-client privilege.  CMCC Br. at 35– 36.  CMCC contends that the bankruptcy court should have granted CMCC's motion for a stay pending the outcome of its interlocutory appeal regarding the allegedly privileged communications.  Id.

A bankruptcy court, where a motion to stay pending appeal has been filed, has the discretion to "suspend or order the continuation of other proceedings in the case."  Fed. R. Bankr. P. 8007(e)(1); see also Samson v. Ward (In re Ward), 184 B.R. 253, 255 (Bankr. D.S.C. 1995) ("The granting of a motion for stay pending appeal is discretionary with the court[.]").  To obtain the "exceptional response" of a stay pending appeal, the movant must establish four elements:  (1) "that the movant is likely to prevail on the merits on appeal;" (2) "that absent a stay the movant will suffer irreparable damage;" (3) "that the adverse party will suffer no substantial harm from the issuance of the stay;" and (4) in circumstances where the public interest is implicated, "the public interest will be served by issuing the stay."  Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986).  The failure to satisfy each of these elements "is fatal to the motion."  McIntyre Land Co. v. McIntyre Bldg. Co. (In re McIntyre Bldg. Co.), No. 10–3029, 2011 WL 1434691, at *8 (Bankr. M.D. Ala. Apr. 14, 2011).

The bankruptcy court did not abuse its discretion in continuing the proceedings despite CMCC's interlocutory appeal because CMCC failed to meet all of the applicable elements. Following CMCC's motion, the bankruptcy court declined to order a stay "based upon the lack of a record supporting a claim of attorney-client privilege," indicating that the bankruptcy court did not deem CMCC's appeal likely to succeed.  Order Granting, in Part, and Deferring, in Part,

Def.'s Mot. to Stay 1, DE 80.  Whether that prediction is accurate or not, it is at least arguable

that CMCC will not prevail on its appeal because CMCC relied on attorney-client

communications as evidence of its cooperation with discovery requests and in favor of vacating

the default judgment.  Thus, it may have waived the attorney-client privilege with regard to those

communications.  See United States v. Lehtinen, No. 13-23030-Civ, 2014 WL 1318661, at *1

(S.D. Fla. Jan. 30, 2014) ("Implied waiver of the attorney-client privilege can occur where a

party voluntarily injects either a factual or legal issue into the case, the truthful resolution of

which requires an examination of the confidential communications.") (quoting Zarrella v. Pac.

Life Ins. Co., No. 10-60754-CIV, 2011 WL 2447519, at *4 (S.D. Fla. June 15, 2011)).  The

bankruptcy court, therefore, did not abuse its discretion in declining to stay the proceeding.

Furthermore, the court need not and will not address the bankruptcy court's decision to

admit the allegedly privileged communication because it is under separate appeal and does not

affect this decision.  At trial, Appellee used the evidence in question to support the award of

punitive damages or, alternatively, as grounds for reinstating the vacated default judgment.  Trial

Tr. at 99–100.  The willful violation was supported by other record evidence, the bankruptcy

court did not reinstate the default judgment, and the court is remanding the punitive damages

award.


**CONCLUSION**

For the foregoing reasons, the bankruptcy court's determination that CMCC willfully

violated the automatic stay is AFFIRMED and its actual compensatory damages award of $1,500

is also AFFIRMED.  Because the $50,000 punitive damages award is excessive, it is VACATED

and REMANDED to the bankruptcy court.  The court reserves decision on the amount of

attorneys' fees and offer of judgment.


                                                      /s/ Jane A. Restani

Dated: August 4, 2016                                   Jane A. Restani
      New York, New York                                Judge